US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED
NOV 1 2 2014
CHRIS R. JOHNSON, Clerk
By
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff <br><br> v. <br><br> $204,885.00 United States Currency <br> Defendants | ) <br> ) <br> ) <br> ) Civil No. 14-2238 <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT FOR FORFEITURE IN REM

Plaintiff, United States of America, by and through Conner Eldridge, United States Attorney for the Western District of Arkansas, and the undersigned Assistant United States Attorney brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

### NATURE OF THE ACTION

1. This is an action to forfeit property to the United States for violations of 21 U.S.C. §§ 841 et seq. and as such is forfeitable under 21 U.S.C. § 881(a)(6).

### THE DEFENDANT IN REM

2. The defendant property consists of $204,885.00 United States Currency that was seized from Collins Talley IV on April 30, 2014, at mile marker 3 on Interstate-40 in Crawford County, Arkansas, which is located in the Western District of Arkansas. It is presently in the custody of the United States Marshals Office in the form of a Citizen's Bank and Trust cashier's check for $204,885.00.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. §§ 1355(a), 1355(b)(1)(A) & (B) and 1395(b). This Court also has jurisdiction over this particular action under 21 U.S.C. § 881(a)(6).

4. This Court has *in rem* jurisdiction over the defendant property pursuant to 28 U.S.C. § 1355(b)(1)(B), incorporating 28 U.S.C. § 1395, because the action accrued in this district or the defendant is found in this district.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1395, because the action accrued in this district or the defendant is found in this district.

## BASIS FOR FORFEITURE

6. The defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes 1) moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of the Controlled Substances Act; 2) proceeds traceable to such an exchange; or 3) moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of the Controlled Substances Act.

## FACTS

7. Please see the Affidavit of Drug Enforcement Administration Task Force Officer Paul Smith, attached hereto as Exhibit "A." The attached affidavit is hereby incorporated hereto as if word by word and made a part of this Complaint. As such, the Affidavit and all 27 additional paragraphs are reincorporated here as if alleged herein and require a responsive pleading to each separate averment contained therein.

## CLAIM FOR RELIEF

WHEREFORE the United States prays that the defendant properties be forfeited to the United States, that the plaintiff be awarded its costs and disbursements in this action, and for such other and further relief as the Court deems proper and just.

          Respectfully submitted,
          CONNER ELDRIDGE
          UNITED STATES ATTORNEY

By:
          Aaron Jennen
          Assistant United States Attorney
          Arkansas Bar No. 2004156
          414 Parker Avenue
          Fort Smith, AR 72901
          (479) 783-5125
          Email: Aaron.Jennen@usdoj.gov

## VERIFICATION

I, Paul Smith, hereby verify and declare under penalty of perjury that I am a Drug Enforcement Administration Task Force Officer, that I have read the foregoing Verified Complaint in Rem and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent with Homeland Security Investigations.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated this 10th day of November 2014.

_____
Paul Smith, Task Force Officer
Drug Enforcement Administration

## AFFIDAVIT

I, Task Force Officer Paul Smith, assigned to the Drug Enforcement Administration, being first duly sworn, hereby depose and state as follows:

1. I have been a Task Force Officer with DEA since April 11, 1997. I have received specialized training in the enforcement of state and federal narcotics laws. The training and experience has involved, among other things, (a) the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealment of proceeds of drug trafficking; (b) surveillance; (c) analysis of documentary and physical evidence; (d) conducting undercover operations; (e) preparing and executing state and federal search warrants and arrest warrants; (f) collecting information to further investigations; and (g) arresting individuals involved in drug trafficking violations. I also have experience in investigations involving the interception of wire communications. I am currently assigned to the Tactical Diversion Squad (TDS). I have been working with this task force and with Agents of the Drug Enforcement Administration (DEA) routinely for approximately the last fifteen years. Prior to my assignment, I was assigned to the Fort Smith Police Department as a narcotic detective for ten years. In that capacity, I am responsible for the investigation of narcotic traffickers, manufacturers and transporters. Based on my training and experience, I have become familiar with the manner in which narcotics traffickers conduct their drug-related businesses, including the methods employed by narcotics traffickers to import and distribute narcotics, drug proceeds, and other aspects of narcotics trafficking. I have been involved with investigations involving interdicted "loads" of controlled substances or bulk cash smuggling and I have personally conducted numerous investigations involving the unlawful possession, manufacture, and distribution of controlled substances, including cocaine and methamphetamine as well as investigations involving money laundering offenses.

2. I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation, from discussions with other agents of DEA and other law enforcement officers. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another DEA agent or law enforcement officer. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated.

3. On April 29, 2014, at approximately 11:15pm, Arkansas State Police (ASP) Corporal Olen Craig conducted a traffic stop on a vehicle being driven by Collins TALLEY IV for a traffic violation at mile marker 3 on Interstate-40. Also in the car was Mayra A Andrade MALDONADO as a passenger. The vehicle had been rented by Claudia Elena SALINAS, who was not present. During the traffic stop, Cpl. Craig obtained consent to search the vehicle. Four, four-gallon paint cans containing a large amount of United States currency, and a separate bundle of United States currency in a suitcase were recovered. The total amount of the money recovered was $204,885.00.

4. TALLEY was questioned and advised he lived in Cabazon, California. TALLEY advised that he had traveled to Florida via airplane with SALINAS, whom he identified as a girlfriend. TALLEY stated that SALINAS left separately, but rented the vehicle for his use. TALLEY identified MALDONADO as his wife. TALLEY advised that SALINAS and MALDONADO knew about one another. TALLEY also claimed that the money recovered from the vehicle belonged to him, and that he always travels with it. TALLEY advised that he had purchased the paint cans from Home Depot for the purpose of storing the money that was seized.

5. MALDONADO was also interviewed. MALDONADO stated that TALLEY was her live-in boyfriend. MALDONADO initially denied knowing SALINAS, but when MALDONADO was told that TALLEY said she did know her, MALDONADO admitted knowing SALINAS. MALDONADO said she flew to Orlando, Florida and met TALLEY. MALDONADO stated she was unaware that TALLEY had a large amount of money in the vehicle, and that the money did not belong to her. During the interview TALLEY could be heard yelling through the wall in Spanish. MALDONADO advised that "he [TALLEY] is telling me not to say anything and ask for an attorney."

6. The barcode on the paint cans and a rotosaw recovered from the vehicle showed to have been purchased from Home Depot Store 6331 located in Orlando, Florida. The paint cans had a homemade label of "MH Ready Patch" affixed to them.

7. TALLEY identified a Samsung cellular telephone (909-244-7667) that was recovered from the vehicle as belonging to him, consented to the search of the phone, and provided the access code. This phone was searched and located on the phone were numerous items of interest.

8. On TALLEY's phone were nine photographs of a piece of cardboard (two of the front side and seven of the back side) dated April 10, 2014, that list out prices and quantities for items, that based on my training and experience, are names of high-grade marihuana, and lists a total cost of all these items of "183,250."

9. On TALLEY's phone were multiple photographs of TALLEY.

10. On TALLEY's phone was one photograph dated February 2014 of a piece of paper, which lists prices and quantities for items, that based on my training and experience, are names of high-grade marihuana.

11. On TALLEY's phone were three photographs, that based on my training and experience are of marihuana in caplet form, dated January 2014.

12. On TALLEY's phone were two photographs dated December 2013, that based on my training and experience are of two large pieces of crack cocaine.

13. On TALLEY's phone were eight photographs dated November 2013 of a piece of paper, which lists prices and quantities for items, that based on my training and experience, are names of high-grade marihuana.

14. On TALLEY's phone were five photographs dated October 2013 of a piece of paper, which lists prices and quantities for items, that based on my training and experience, are names of high-grade marihuana.

15. On TALLEY's phone were four photographs dated September 23, 2013, of a piece of paper, which lists prices and quantities for items, that based on my training and experience, are names of high-grade marihuana.

16. On TALLEY's phone were four photographs dated September 4, 2013, of a piece of paper, which lists prices and quantities for items, that based on my training and experience, are names of high-grade marihuana.

17. On TALLEY's phone were two photographs dated August 28, 2013 of a piece of paper, which lists prices and quantities for items, that based on my training and experience, are names of high-grade marihuana.

18. On TALLEY's phone were seven photographs dated August 7, 2013 of a piece of paper, which lists prices and quantities for items, that based on my training and experience, are names of high-grade marihuana.

19. On TALLEY's phone were two photographs dated August 5, 2013, which based on my training and experience depict high-grade marihuana.

20. On TALLEY's phone were two photographs dated July 22, 2013 of a piece of paper, which lists prices and quantities for items, that based on my training and experience, are names of high-grade marihuana.

21. On TALLEY's phone was one photograph dated July 9, 2013 of a piece of paper, which lists prices and quantities for items, that based on my training and experience, are names of high-grade marihuana.

22. On TALLEY's phone were two photographs dated July 4, 2013 of a piece of paper, which lists prices and quantities for items, that based on my training and experience, are names of high-grade marihuana.

23. On TALLEY's phone were three photographs dated May 2013 of a two pieces of paper, which list prices and quantities for items, that based on my training and experience, are names of high-grade marihuana.

24. On TALLEY's phone were numerous shipping and address labels with names and addresses other than TALLEY on them, including one with a delivery address in Orlando, Florida.

25. I conducted a records check of the names and towns on the address labels referenced in Paragraph 24 above and could not find a listing for that name. I then conducted a check for the addresses listed on the labels and found that the actual resident has a different name than the one listed on the labels. Based on my training and experience, this is consistent with the illicit shipment of narcotics to an actual address using fraudulent names for the addressee.

26. ASP conducted an ion scan of the money and some of the items seized from the vehicle on April 30, 2014. Money in one of the paint cans was positive for cocaine, the bundle of money recovered from the suitcase was positive for cocaine, and crates and a Febreeze bottle inside the vehicle were positive for cocaine.

27. This affidavit is submitted for the limited purpose of supporting the forfeiture of the $204,885.00 in United States currency referenced herein and contains only information sufficient for a finding of probable cause.

FURTHER AFFIANT SAYETH NOT.

Paul Smith
Task Force Officer, Drug Enforcement Administration

Subscribed to and sworn before me this 10th of November, 2014.

State of Arkansas    )
County of ~~Washington~~ Crawford )

Before me, the above authority personally appeared, Task Force Officer Paul Smith, who having produced his Drug Enforcement Agency credentials as identification and having being duly sworn, states that the foregoing is true to the best of his knowledge, information, and belief. Witness my hand and official seal on this the 10th day of November, 2014.

Joyce L. Snow                                                    (seal)
Notary Public
Commission Expires: March 28, 2018